UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR ENVIRONMENTAL SCIENCE, ACCURACY & RELIABILITY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL PARK SERVICE, *et al.*,<br><br>Defendants. | Civil Action No. 14-cv-1409 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

The Center for Environmental Science, Accuracy & Reliability and Jean Sagouspe (the "plaintiffs") filed this lawsuit against the National Park Service and three government officials (collectively, the "Federal Defendants") alleging violations of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 43214 *et seq.*, due to the diversion of fresh water by the Hetch Hetchy Project from the Tuolumne River to the City of San Francisco. *See* Compl at 1, ECF No. 1. According to the plaintiffs, this Project jeopardizes the continued existence of listed species of salmon, smelt, and sturgeon, *id.* ¶ 17, and adversely impacts local economic interests by diverting water needed for farming while California is experiencing severe drought conditions, *id.* ¶¶ 2, 18, 20. The Federal Defendants along with the City and County of San Francisco, which have moved to intervene in this action, request transfer of this case to the Eastern District of California, pursuant to 28 U.S.C. § 1404(a). Defs.' Mot. to Transfer at 1, ECF. No. 17; CCSF's Mot. to Intervene, ECF No. 14 ("With this Motion to Intervene, CCSF [] also submitted . . . a Motion for Transfer of Venue Pursuant to 28 U.S.C. § 1404(a)" to the Eastern District of California.). For the reasons

1

explained in more detail below, given the significant local interests implicated by this action, the Court concludes that the transfer of this case to the Eastern District of California best serves the interests of justice and, therefore, grants the defendants' motion.[1]

## I.     BACKGROUND

A detailed statement of the facts is not necessary to comprehend the significant local interests at stake requiring transfer of this action to a federal court in the State of California. In brief, the Hetch Hetchy Project dams the Tuolumne River within Yosemite National Park to direct fresh water to San Francisco. Compl. at 11. The plaintiffs allege that this Project effects the operations of the Tuolumne and San Joaquin Rivers as well as the Sacramento-San Joaquin River Delta by increasing the salinity in those waterways and thereby "jeopardiz[ing] the continued existence" of three endangered fish species.[2]  *Id.* at ¶ 17.

Pending before the Court is the Federal Defendants motion to transfer the case to the Eastern District of California. *See* Defs.' Mot. to Transfer, ECF No. 17.[3]

---

[1] The City and County of San Francisco (collectively "CCSF") have moved to intervene on grounds that CCSF has a substantial interest in the outcome of this litigation as the "owner, operator and primary beneficiary of the water and power system that is the subject of the Complaint." CCSF's Mem. Supp. Mot. to Intervene on Behalf of Defendants at 1, ECF No. 14. While the Federal Defendants do not oppose this motion, *see* Mot. to Intervene at 2, the plaintiffs oppose the "motion to intervene as untimely until after the motion to transfer has been decided," Pls.' Opp'n to CCSF's Mot. to Intervene and Request to Stay at 2, ECF No. 18. The CCSF's motion will be transferred for resolution by the Eastern District of California. *See Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 71 n.9 (D.D.C. 2003) ("Because the court transfers this action, it leaves the pending motions to intervene to the sound discretion of its sister court in the Southern District of Florida."); *Martin-Trigona v. Meister*, 668 F. Supp. 1, 4 (D.C. Cir. 1987) (declining to consider other pending motions upon transfer pursuant to section 1404(a)).

[2] The three endangered fish species at issue are (1) the delta smelt (Hypomesus transpacificus), Compl. ¶ 12; (2) several salmonid species, including the Central Valley Steelhead (Oncorhynchus mykiss), the Central Valley Spring-Run Chinook Salmon (Oncorhynchus tshawytscha), and the Winter-Run Chinook Salmon (Oncorhynchus tshawytscha), *id.* ¶ 13; and (3) the Green Sturgeon (Acipenser medirostris), *id.* ¶ 14.

[3] The Federal Defendants also requested a stay of the time for filing both their answer and the administrative record ("AR") until after resolution of the pending transfer motion. *See* Defs.' Mem at 18-21, ECF No. 17; Defs.' Mot for Relief from LcvR 7(n). These requests for a stay of procedural deadlines are denied as moot since the Federal Defendants have already filed an Answer, *see* Answer to Compl., ECF No. 19, and the local civil rules of this Court regarding the timing for the filing of the AR will no longer apply to this action once it is transferred to the Eastern District of California.

2

## II.     LEGAL STANDARD

A case may be transferred to any district where venue is also proper "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 579 (2013) ("§1404(a) does not condition transfer on the initial forum's being 'wrong' . . . it permits transfer to any district where venue is also proper (*i.e.*, 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation."). The Supreme Court has explained that "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Thus, "transfer in derogation of properly laid venue" in the District of Columbia "must . . . be justified by particular circumstances that render the transferor forum inappropriate by reference to the considerations specified in that statute." *Starnes v. McGuire*, 512 F.2d 918, 925 (D.C. Cir. 1974). The movant bears the burden of persuasion that transfer of an action is proper. *SEC v. Savoy Industries, Inc*., 587 F.2d 1149, 1154 (D.C. Cir. 1978); *Niagara Pres., Coalitaion, Inc. v. FERC*, 956 F. Supp. 2d 99, 102-103 (D.D.C. 2013); *Hooker v. NASA*, 961 F. Supp. 2d 295, 297 (D.D.C. 2013).

## III.    DISCUSSION

The first step in resolving a motion for transfer of venue under § 1404(a) is to determine whether the proposed transferee district is one where the action "might have been brought." 28 U.S.C. § 1404(a); *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. at 579. In actions raising a federal question by naming as a defendant a federal agency or United States official in his or her official capacity, venue is proper in any judicial district where (1) "a

defendant in the action resides;" (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated;" or (3) a "plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Both plaintiffs are residents of California, *see* Compl. ¶¶ 1, 2, and challenge federal agency actions involving the Hetch Hetchy Project, which is located in the Eastern District of California, *id.*, *generally*. Thus, the Federal Defendants correctly point out that this action "might have been brought" in the Eastern District of California. The Court therefore turns to consideration of which forum best serves the convenience of the parties and witnesses, and the interest of justice.

In resolving motions to transfer venue under Section 1404(a), courts have not limited their consideration to the express statutory factors of "convenience of parties and witnesses," 28 U.S.C. § 1404(a)(1), but have also considered other private and public interests factors, which elucidate the concerns implicated by the phrase "in the interest of justice." *See, e.g.*, *Stewart Org.*, 487 U.S. at 29 *Foote v. Chu*, 858 F. Supp. 2d 116, 120 (D.D.C. 2012); *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 176 (D.D.C. 2007); *Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 15 (D.D.C. 1996). The private interest factors are addressed first, followed by the public interest factors.

### A.     Analysis of Private Interest Factors

Courts generally look to six private interest factors in evaluating transfer motions: 1) "the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants;" *Trout Unlimited*, 944 F. Supp. at 16; 2) "the defendants' choice of forum," *id.*; 3) "whether the claim arose elsewhere," *id.*; 4) "the convenience of the parties," *id.*; 5) "the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," *id.*; and 6) "the ease of access

to sources of proof," *id. See also Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 32–33 (D.D.C. 2008) (citing *Akiachak Native Cmty. v. Dep't of Interior*, 502 F. Supp. 2d 64, 67 (D.D.C. 2007)).

While the first private interest factor is neutral, the second and third factors favor transfer of this action to the Eastern District of California. With respect to the first factor, any deference given to the plaintiff's choice of forum is minimized where the plaintiff's "choice of forum has no meaningful ties to the controversy and no particular interest in the parties or the subject matter." *Lentz v. Eli Lilly and Co.*, 464 F. Supp. 2d 35, 38 (D.D.C. 2006)). The dispute over the alleged effect of the Hetch Hetchy Project on the listed endangered fish species arises out of activity in the Eastern District of California, which is also the home forum of Plaintiff Sagouspe. Compl. ¶ 2.[4] These considerations are a significant counter-weight to the plaintiffs' chosen forum in Washington, D.C. *See Pac. Mar. Ass'n v. N.L.R.B.*, 905 F. Supp. 2d 55 (D.D.C. 2012) (plaintiffs' chosen forum afforded less deference where the "'plaintiff's choice of forum is not the plaintiff's home forum'" (quoting *Stockbridge–Munsee Cmty. v. United States*, 593 F. Supp. 2d 44, 47 (D.D.C. 2009) (internal quotation marks omitted)); *cf. United States v. H & R Block, Inc.*, 789 F. Supp. 2d 74, 79–80 (D.D.C. 2011) (giving deference to plaintiff's choice of forum when the plaintiff was the federal government with principal decision-makers located in the District of Columbia and activity at issue was proposed merger of two national corporations, operating in a national marketplace that would have nationwide antitrust implications).

With respect to the second and third factors, the Federal Defendants proposed forum is the Eastern District of California, where the challenged activity is occurring. While decision-

---

[4] While the organizational plaintiff is "a nonprofit California corporation," Compl. ¶ 1, the pleadings are silent on whether this plaintiff maintains its principal place of business in the Eastern District of California for purposes of residency. *See* 28 U.S.C. § 1391(c)(2).

makers may be located in Washington D.C., the decisions themselves concern a government project that affects the diversion of water flows in rivers in California. *See Pac. Mar. Ass'n v. N.L.R.B.*, 905 F. Supp. 2d 55, 62 (D.D.C. 2012) (transferring case to Oregon "although the decision at issue in this action was made in Washington, D.C., where 'any role played by officials in the District of Columbia is overshadowed by the fact that their decisions were based on work done by government employees' in Oregon," quoting *Airport Working Grp. of Orange Cnty., Inc. v. U.S. Dep't of Defense*, 226 F. Supp. 2d 227, 230 (D.D.C.2002)). As the Federal Defendants explain, "the Hetch Hetchy Project facilities, the diversions from the Tuolumne River, the alleged effects on downstream habitat, and the cutbacks of water allegedly imposed on Plaintiff Sagouspe and others similarly situated, occurred or allegedly occurred in the Eastern District of California." Defs.' Mem. at 15. Indeed, the "mere involvement on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative." *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25-26 (D.D.C. 2002). Thus, the second factor, the Federal Defendants choice of forum in the Eastern District of California, and the third factor, where the claim arose, both weigh strongly in favor of transfer.

The remaining three private interest factors regarding the convenience of the parties and witnesses, and the ease of access to proof, are largely irrelevant because the case will almost certainly be resolved as a matter of law based on the administrative record and no witnesses are likely to be called. *See Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 56 (D.D.C. 2012) ("the convenience of witnesses and the ease of access to sources of proof, are neutral with respect to transfer" when the case will be decided on the basis of an administrative record); *see also Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 12 (D.D.C. 2007). Moreover, to the extent that the AR is a significant "source of proof," "the documents

comprising the administrative record that would be the basis of adjudication in this case would [] be primarily in the Eastern District of California" but may be electronically accessible from this District as well.  *See* Defs.' Mem. at 2.  Thus, to the extent the "ease of access to proof" factor is relevant in this case it is of "little weight," *S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 88 (D.D.C. 2004), or weighs "slightly in favor of transfer to the forum in which the administrative records reside."  *Bergmann v. Dep't of Transp.*, 710 F. Supp. 2d 65, 74–75 (D.D.C. 2010).

Accordingly, on balance, the private interest factors weigh in favor of transfer, with the second and third such factors tipping the scale in favor of adjudicating this action in the Eastern District of California.

**B.     Analysis of Public Interest Factors**

In addition to the private interest factors above, the public interest factors also favor transfer.  Courts typically look to three factors in evaluating the public interest: "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home."  *Foote v. Chu*, 858 F. Supp. 2d 116, 123 (D.D.C. 2012) (citing *Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 56 (D.D.C. 2011)).  The first two of these factors are essentially neutral.  The first factor "is generally applied in cases that implicate state law, with which federal courts are not equally familiar."  *Oceana v. Bureau of Ocean Energy Mgmt.*, 962 F. Supp. 2d 70, 78 (D.D.C. 2013).  That is not the case here.  On the contrary, "[t]his is an action grounded in the APA, 5 U.S.C. § 706, and the citizen suit provisions of the ESA, 16 U.S.C. s 1540(g)."  Pls.' Opp'n to Defs.' Mot. to Transfer ("Pls.' Opp'n") at 25, ECF No. 20.  Federal district courts have equal familiarity with

these federal laws and, consequently, the first public interest factor is neutral.  Second, the parties agree that the congestion of cases in the Eastern District of California and this Court are essentially equivalent and therefore this second public interest factor is neutral.  *See id.* at 24 ("[t]he Government has conceded that relative congestion of the two courts does not provide a basis for transferring venue").

The third public interest factor regarding local interest in this dispute strongly favors transfer of venue to the Eastern District of California.  The Federal Defendants rightly point out that "the importance of water as a scarce commodity in California" creates "a very strong 'local interest in making local decisions'" and militates strongly in favor of transferring this case to the Eastern District of California.  Defs.' Mem. at 9.  California is currently "undergoing its worst drought in recorded history and court orders that could alter the availability or allocation of water are of vital local importance." *Id.* at 10.  The plaintiffs' themselves allege, among other things, that as a result of the Federal Defendants' handling of the Hetch Hetchy Project, there have been "cutbacks" in farming irrigation water.  Compl. ¶¶ 2, 18, 22.  Indeed, one of the plaintiffs, Plaintiff Sagouspe, claims to be injured by the defendants conduct because he is the owner of farmland in California that has been allegedly negatively affected by the water diversions at issue in this case.  *Id.* ¶ 2.  Thus, the Court agrees with the Federal Defendants that "the water distribution, irrigation, and conservation interests potentially at stake in this action are primarily local, satisfying the local decision criterion for transfer under 28 U.S.C. § 1404(a)." *See* Defs.' Mem. at 10.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that transfer to the Eastern District of California is in the interests of justice and warranted under 28 U.S.C. § 1404(a). Accordingly, the defendants' motion to transfer venue is GRANTED.

An appropriate Order accompanies this Memorandum Opinion.

Date: December 10, 2014

_____
BERYL A. HOWELL
United States District Judge