# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CENTER FOR ENVIRONMENTAL SCIENCE ACCURACY AND RELIABILITY**, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> **NATIONAL PARK SERVICE,** *et al*., <br><br> Defendants, <br><br> **THE CITY AND COUNTY OF SAN FRANCISCO,** <br><br> Intervenor Defendant. | 1:14-cv-02063 LJO MJS <br><br> **ORDER DENYING MOTION TO SUPPLEMENT AND COMPLETE THE RECORD AND FOR LIMITED DISCOVERY  (DOC. 47)** |

## I. INTRODUCTION

This case concerns management of the Hetch Hetchy Water and Power Project ("Hetch Hetchy Project"), a system of dams, diversion structures, and hydropower facilities on the Tuolumne River, which includes, among other features, Hetch Hetchy Reservoir and the O'Shaughnessy Dam, both located entirely within Yosemite National Park. Doc. 1; Administrative Record ("AR")[1] 2170. The San Francisco Public Utilities Commission ("SFPUC") a department of the City and County of San Francisco (collectively, "San Francisco"), owns and operates the Hetch Hetchy Project.

---

[1] The AR was lodged with the Court on CD Rom. *See* Doc. 46.

Plaintiffs, the nonprofit corporation Center for Environmental Science, Accuracy & Reliability ("CESAR") and Jean Sagouspe, one of CESAR's members (collectively, "Plaintiffs"), filed this lawsuit on August 18, 2014, against the National Park Service ("NPS"), an agency of the U.S. Department of the Interior ("Interior"), and various NPS and Interior officials (collectively, "Federal Defendants"). Doc. 1 (Complaint). The Complaint alleges:

(1) Federal Defendants violated Section 7 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536, by approving annually instream flow and other operating requirements for the Hetch Hetchy Project without first consulting with the Fish and Wildlife Service ("FWS") and/or the National Marine Fisheries Service ("NMFS"), *id*. at ¶¶ 20-22;

(2) "[B]y authorizing the diversion of water out of the Tuolumne River," Federal Defendants have caused a take of threatened and endangered species in violation of, Section 9 of the ESA, 15 U.S.C. § 1538, *id*. at ¶¶ 23-25; and

(3) Federal Defendants' violated the National Environmental Policy Act ("NEPA) by failing to prepare an Environmental Impact Statement ("EIS") before "prescribing the annual instream flow and other operating requirements for the Hetch Hetchy Project." *Id*. at ¶¶ 26-28.

San Francisco was granted permission to intervene as a defendant on January 20, 2015. Doc. 40.

Before the Court for decision is Plaintiffs' request to "supplement and complete the record and for limited discovery." Doc. 47-1. Specifically, Plaintiffs request:

(1) an order requiring Federal Defendants add to the AR:

    (a) reports and correspondence of NPS's Hetch Hetchy Program Manager, Jennifer Treutelaar ("Treutelaar"), which, at a minimum, should include annual and quarterly reports called for in a 2010 Memorandum of Understanding between NPS and the City and County of San Francisco, *id*. at 9-10;

    (b) flow release records from O'Shaughnessy Dam, *id*. at 11;

    (c) emails, correspondence, and records concerning development of the "2014 draft final

2

O'Shaughnessy Dam Instream Flow Management Plan," including 125 pages of material obtained by Plaintiffs from San Francisco using the California Records Act, *id*. at 11-12; (2) leave to supplement the record with the declaration of James R. Snow, *id*. at 13-15; and (3) permission to take the deposition of Treutelaar or a similar NPS official to "explain [NPS's] actions in the operation of the Hetch Hetchy Project, *id*. at 15-17.

Federal Defendants, Doc. 50, and San Francisco, Doc. 49, filed oppositions to the motion. Plaintiffs filed a reply. Doc. 51. The matter was taken under submission on the papers pursuant to Local Rule 230(g). Doc. 52.

## II. DISCUSSION

**A.    The APA's Record Review Rule.**

In an APA case, the scope of judicial review is limited to "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142 (1973). An agency's designation and certification of the administrative record, is entitled to a "presumption of administrative regularity." *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007). Therefore, courts presume that public officials have properly discharged their official duties. *Id*. It is the burden of the party seeking to supplement the record to overcome this presumption by clear evidence to the contrary. *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993); *McCrary*, 495 F. Supp. 2d at 1041.

While a reviewing court may consider information outside the record, it may do so only under certain, narrow circumstances. *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602-03 (9th Cir. 2014) ("*San Luis v. Jewell*"). A court may allow expansion of the administrative record in "four narrowly construed circumstances":

> (1) supplementation is necessary to determine if the agency has considered all factors and explained its decision; (2) the agency relied on documents not in the record; (3) supplementation is needed to explain technical terms or complex subjects; or (4) plaintiffs have shown bad faith on the part of the agency.

3

*Id*. (internal citation and quotation omitted). "Keeping in mind the Supreme Court's concerns with reviewing court factfinding, we have approached these exceptions with caution, lest the exception ... undermine the general rule." *Id.* (internal citation and quotation omitted). "If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985). As the Ninth Circuit warned in *San Luis v. Jewell*:

> There is a danger when a reviewing court goes beyond the record before the agency. "When a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the agency." *Asarco, Inc. v. EPA,* 616 F.2d 1153, 1160 (9th Cir.1980). *See Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.,* 100 F.3d 1443, 1450 (9th Cir.1996) ("Judicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court."). Accordingly, we do not review "the evidence to determine the correctness or wisdom of the agency's decision ... even if the court has also examined the administrative record." *Asarco,* 616 F.2d at 1160. If the reviewing court cannot find substantial evidence in the record, it should "not compensate for the agency's dereliction by undertaking its own inquiry into the merits," *id.,* but should remand to the agency for further proceedings, *see INS v. Ventura,* 537 U.S. 12, 16 (2002).

*Id*. at 602-603.

**B.     Applicability of the APA Record Review Rule to Plaintiffs' Claims.**

Plaintiffs admit that the APA's standards of decision and limitations on the consideration of extra-record evidence govern their NEPA claim, but assert that the APA does not limit its ESA claims to the administrative record. Doc. 47-1 at 7-8. Assuming, *arguendo*, Plaintiffs are correct that the APA does not limit Plaintiffs' ESA claims to the administrative record, Plaintiffs have failed to file a timely request that the Court consider any information outside the administrative record in connection with their ESA claim. The Scheduling Order in this case states:

4

> Absent collective stipulation of the parties or order of the Court for good cause shown, there shall be no discovery in this case. A motion for discovery, if filed, must be filed no later than July 15, 2015, and promptly set for hearing.

Doc. 44 at 4. The Scheduling Order further provides that July 15, 2015 was the "Deadline for Plaintiffs and/or Defendant Intervenors to file a motion to supplement or limit the administrative record." *Id*. at 3.

Plaintiffs confine the present motion to supplement and/or for discovery to their NEPA claim.

C.     **Reports Relating to the 2010 MOU.**

Plaintiffs maintain that Treutelaar is the primary liaison between NPS and San Francisco and that under a 2010 Memorandum of Agreement ("2010 MOA") between NPS and San Francisco, NPS is required to prepare reports and coordinate meetings regarding compliance with the 2010 MOA. Plaintiffs contend any reports prepared pursuant to the 2010 MOA should be in the AR because they "should disclose the nature and extent of [NPS's] participation in [San Francisco's] out-of-basin transfer of Tuolumne River water and the basis for the [NPS's] conclusion that it need not analyze the environmental impacts of those water transfers under NEPA." Doc. 47-1 at 10.

To understand this assertion and why it is nonsensical, one must examine the nature of the 2010 MOA, the primary purpose of which is to fund NPS efforts to protect the upper Hetch Hetchy watershed. AR 2089-2114. The ultimate goal of the 2010 MOA and the watershed protection activities discussed therein is controlling human activities in that watershed "which have an adverse impact on the microbiological quality of the source water." AR 2089-90. Put simply, the 2010 MOA has no bearing on any aspect of San Francisco's purported "out-of-basin" transfer of Tuolumne River, other than to help control the quality of water available for export. Therefore, Plaintiffs have failed to establish that any reports or documents produced under the auspices of the 2010 MOA are relevant to any claims in this case, let alone that they "disclose the nature and extent of [NPS's] participation in [San Francisco's] out-of-basin transfer of Tuolumne River water and the basis for the [NPS's] conclusion that it need not analyze the environmental impacts of those water transfers under NEPA." Accordingly, Plaintiffs'

5

request to supplement the record with reports relating to the 2010 MOA is DENIED.

**D.    Flow Release Records from O'Shaughnessy Dam.**

Plaintiffs next seek flow documentation allegedly submitted by San Francisco to NPS in compliance with a 1985 Stipulation between NPS and San Francisco ("1985 Stipulation"), which, in exchange for NPS assenting to amend certain rights-of-way required to operate Hetch Hetchy, requires San Francisco to maintain certain minimum instream flows in the upper reaches of the Tuolumne River. AR 1494-99. Among other things, the 1985 Stipulation calls upon San Francisco to "provide the appropriate field offices of the U.S. Forest Service, the National Park Service, the U.S. Fish and Wildlife Service, and the California Department of Fish and Game with, periodic reports of releases from Hetch Hetchy." AR 1495. Plaintiffs assert that these reports of the timing and quantities of water NPS required San Francisco to release "may support or refute the [NPS's] determination not to analyze the environmental impacts of Hetch Hetchy operations." Doc. 47-1 at 11.

The most obvious problem with Plaintiffs' request is that, according to NPS, no such records have been found to exist. *See* Declaration of William A. Sears ("Sears Decl."), Doc. 49, at ¶ 28 ("After a reasonable and diligent search of the SFPUC archives, no copies of correspondence or reports sent by the SFPUC to USFS, NPS or USFWS in accordance with provision 4 of the 1985 Stipulation have been found to exist."). Plaintiffs do not address this assertion in reply and totally fail to present evidence suggesting any such records exist. Therefore, Plaintiffs' request to supplement the record with the requested flow reports is DENIED. *See Winnemem Wintu Tribe v. U.S. Forest Serv*., No. 2:09-CV-01072-KJM-KJ, 2014 WL 3689699, at *11 (E.D. Cal. July 24, 2014) (denying request to supplement record with documents the agency claims do not exist" and refusing request for discovery regarding the existence of those documents because plaintiffs failed to supply "reasonable, non-speculative grounds" for the assertion that the documents do exist.").

//

//

E. **Emails, Correspondence, and Records Concerning Development of the "2014 draft final O'Shaughnessy Dam Instream Flow Management Plan."**

Plaintiffs next request "emails, correspondence, and records" concerning development of the 2014 Draft O'Shaughnessy Dam Instream Flow Management Plan ("2014 Draft Flow Plan"), including 125 pages of material obtained by Plaintiffs from the San Francisco using the California Records Act. Doc. 47-1 at 11-12. Plaintiffs claim that this is a "decision on how the Hetch Hetchy project will be operated in the future" and that omission from the record of documents pertaining the development of the 2014 Draft Flow Plan makes it impossible for the Court to determine whether this "decision" was "arbitrary, capricious or otherwise not in accordance with the law." Doc. 47-1 at 12.

Plaintiffs totally fail to explain how any such documents are relevant to the claims in this case. First, the 2014 Draft Flow Plan is just that, a <u>draft</u>. The 2014 Draft Flow Plan is therefore not a "decision" subject to this Court's jurisdiction under the APA. Accordingly, Plaintiffs cannot show, at least not in generic terms, how documents pertaining to the development of the 2014 Draft Flow Plan have any bearing on any claim in this case.[2] Nor have Plaintiffs provided any specific explanation as to why any individual documents contained within the 125-page submission are otherwise relevant to this case. Plaintiffs' request to supplement the record with these documents is DENIED.

F. **Declaration of John Snow.**

Plaintiffs offer the Declaration of John Snow to prove "that water diverted out of the Tuolumne decreases the amount of fresh water flowing into the delta," which they claim is the type of environmental impact "significantly affecting the quality of the human environment" that NEPA requires an agency to examine. Doc. 47-1 at 15. Plaintiffs appear to invoke the first exception to the

---

[2] As a reminder, the claims in the Complaint are that: (1) Federal Defendants violated ESA § 7 by approving annually instream flow and other operating requirements for the Hetch Hetchy Project without first consulting with FWS and/or NMFS; (2) "by authorizing the diversion of water out of the Tuolumne River," Federal Defendants have cause a take of threatened and endangered species in violation of ESA § 9; and (3) Federal Defendants' violated NEPA by failing to prepare an EIS before "prescribing the annual instream flow and other operating requirements for the Hetch-Hetchy Project."

7

record review rule, which allows consideration of extra-record evidence where "necessary to determine whether the agency has considered all relevant factors and has explained its decision."

Defendants argue that the "amount of fresh water flowing into the delta" is irrelevant to adjudicating Plaintiffs' NEPA claim, because the issue in this case is whether Federal Defendants are legally obligated to perform a NEPA analysis of such effects, not the sufficiency of a NEPA analysis already performed." Doc. 50 at 16. This objection is not well founded. Plaintiffs claim that NEPA requires Federal Defendants to prepare an EIS under the present circumstances. Assuming numerous jurisdictional and statutory prerequisites are satisfied, NEPA requires an EIS is for "every ... major federal action significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(c). The issue of whether diversions from the Tuolumne reduce the amount of freshwater flowing into the Delta is not "irrelevant" to Plaintiffs' NEPA claim. It is plausible that such reductions might constitute a "significant" impact on the quality of the human environment.

However, "relevance" is not the applicable standard. All of the exceptions to the bar against consideration of extra record evidence must be construed narrowly "so that the exception does not undermine the general rule." *Land Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir.2005). The moving party must make a viable argument that failure to supplement the record will "effectively frustrate[] judicial review." *See Friends of Yosemite Valley v. Scarlett*, 439 F. Supp. 2d 1074, 1090 (E.D. Cal. 2006) (citing *Camp v. Pitts*, 411 U.S. 138, 143 (1973)). Here, the Court does not believe failure to supplement the record with the Snow Declaration will effectively frustrate judicial review under the circumstances. This is primarily because the factual proposition "that water diverted out of the Tuolumne decreases the amount of fresh water flowing into the delta" is indisputable and has been relied upon in numerous prior cases. The Snow Declaration cites only <u>cases</u> as support for the key factual assertion relied upon by Plaintiffs. *See* Doc. 47-2 at ¶ 6 (citing *San Luis & Delta-Mendota Water Auth. v. United States*, 672 F.3d 676, 685 n.8 (9th Cir. 2012) (quoting *United States v. State Water Res. Control Bd.*, 182 Cal. App. 3d 82,107 (Cal. Ct. App. 1986)). Accordingly, judicial review will not be

frustrated in the absence of the Snow Declaration, as the key fact the Declaration seeks to establish readily can be established through other, more straightforward means.

Plaintiffs' request to supplement the record with the declaration of John Snow is DENIED.

### G. Deposition of Treutelaar or Similar Official

Lastly, Plaintiffs request permission to conduct the targeted deposition of Hetch Hetchy Program Manager Jennifer Treutelaar or another appropriate official to "explain [NPS's] actions in the operation of the Hetch Hetchy Project," and/or "resolve [] factual issues that otherwise are likely to plague this case through summary judgment." Doc. 47-1 at 15-17. For claims governed by the APA, discovery is appropriate if a plaintiff can establish such discovery is reasonably calculated to lead to the discovery of admissible evidence that falls within one of the narrow exceptions to the general rule limiting review to the administrative record. *See Pinnacle Armor, Inc. v. United States*, No. 1:07-CV-01655-LJO, 2013 WL 2244393, at *2 (E.D. Cal. May 21, 2013) (citing *Public Power Council v. Johnson*, 674 F.2d 792, 793 (9th Cir. 1982); *Animal Defense Counsel v. Hodel*, 840 F.2d 1432, 1436-37 (9th Cir. 1988); *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dept. of Agriculture*, 499 F.3d 1108, 1117 (9th Cir .2007)); Fed. R. Civ. P 26(b)(1). Plaintiffs' generic pronouncements that discovery will help "explain" NPS's actions fall far short of this mark.

Plaintiffs also argue that "[t]his deposition could be combined with any other discovery required for the Center's ESA citizen suit claims, which are not limited to the administrative record." Doc. 47-1. Without commenting on the merits of Plaintiffs' assertion that its ESA claims are not limited to the administrative record, the Court simply reiterates that the scheduling order in this case indicated that "[a]bsent collective stipulation of the parties or order of the Court for good cause shown, there shall be no discovery in this case. A motion for discovery, if filed, must be filed no later than July 15, 2015, and promptly set for hearing." Doc. 44 at 4. No motion for discovery under the ESA was timely filed, as the present request explicitly is restricted to Plaintiffs' NEPA claim.

Plaintiffs' request for discovery is DENIED.[3]

## III. CONCLUSION

For the reasons set forth above, Plaintiffs motion to supplement and complete the record and for limited discovery is DENIED.

IT IS SO ORDERED.

Dated:  **September 14, 2015**              /s/ Lawrence J. O'Neill
                                            UNITED STATES DISTRICT JUDGE

---

[3] In light of the fact that Plaintiffs' motion can be denied on narrow grounds, the Court declines to address the Parties' competing positions on various other issues raised in the papers, including the scope and meaning of the Raker Act and whether or not Plaintiffs' have alleged an APA "failure to act" claim.

10